# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D23-2754
LT Case No. 2023-DP-000111-A

_____

IN RE: JANE DOE,

    Appellant.

_____

On appeal from the Circuit Court for Seminole County.
John D. Galluzzo, Judge.

Joanna Tolbert, of Central Florida Legal Group, PLLC, Lake Mary, for Appellant.

September 15, 2023

PER CURIAM.

Appellant, a fifteen-year-old pregnant female ("the minor"), appeals from the circuit court's dismissal of her petition for judicial waiver of the statutory requirements that her legal guardian be informed of and consent to her planned abortion. Because the dismissal rests on a legal error rather than a factual finding, we vacate it and remand for a new hearing.

### I.

On August 29, 2023, the minor filed her petition in the Eighteenth Judicial Circuit. That same day, the court set the petition for a hearing and appointed counsel for her.[1]

_____

[1] Consistent with section 390.01116, Florida Statutes (2023), and Rule 9.147(f) of the Florida Rules of Appellate Procedure, we

The court held the hearing on August 31, 2023. The court began by asking the minor whether she attends school, what kind of school she attends, and when she first discovered her pregnancy. The minor shared that she attends high school, and that she learned she was six-weeks pregnant approximately two weeks before the hearing, meaning that she was approximately eight-weeks pregnant at the time of the hearing. The minor then testified that her pregnancy had resulted from voluntary sex at a high school party, and she has not been informed by any medical professional that she suffers from a medical condition that would make her pregnancy high-risk.

At this point, the court paused its questioning of the minor, stating, "I have a real problem. And this is nothing about you. . . . There is a new state law that went into effect July 1st. . . . [I]t was enacted under Florida Statute 390.011 [sic], and it prevents me from allowing you to obtain . . . a termination of your pregnancy . . . after six weeks." The court then stated that under the new law, it could authorize a waiver of parental notice and consent past six weeks of gestational age only "if you had a medical condition that required it because of your own health and safety, or if you were subject to any type of incest." The court thus announced that "I don't have any choice but to deny the petition," observing that the minor did not have any writing signed by a doctor stating that she had a medical condition.

The court then extended counsel's appointment for the purpose of appeal "so that [counsel] can try and see if you can get this sorted out, but I'm stuck." After learning that the minor was fifteen years old, the court stated, "just by your age alone, I think that you would otherwise qualify" for judicial waiver. The minor then stated that she lives with her grandmother, they "don't really have a good relationship," and "it's not really easy to talk to her about it." Instead of inquiring further into the nature of the minor's relationship with her grandmother and the reasons for her communication difficulties, the court asked her a few unrelated questions about her employment, her income from that

recite only portions of the record that cannot be used to identify the minor.

2

employment, her ability to independently support the child and live on her own with the child, and whether she has cared for a child before.

After the minor answered these few additional questions and informed the court that she does not make enough money to independently support the child and has never cared for a child before, the court stated: "[B]ased upon your status as being cared for by your grandmother, the difficulties in the relationship with your grandmother, and being able to . . . carry this child and support the child independently . . . I would have otherwise granted the request but for the change in the statute."[2] This appeal then followed.

## II.

The Florida Parental Notice of and Consent for Abortion Act generally prohibits the performance or induction of abortions on pregnant minors unless their parents or legal guardians are notified of the abortion and have provided written informed consent to the abortion. *See* § 390.01114(3), (4)(a), (5)(a), Fla. Stat. (2023). These statutory requirements of parental notice and consent may be waived upon a minor's petition if a court "finds, by clear and convincing evidence, that the minor is sufficiently mature to decide whether to terminate her pregnancy." *Id.* § 390.01114(6)(c). If the court makes that finding, it must be based on consideration of the eight factors set forth in the statute. *Id.* If the court does not make the specified finding, "it must dismiss the petition." *Id.*

Dismissals of judicial waiver petitions receive exceedingly deferential appellate review. Under the statute, "[t]he reason for overturning" an order that declines to grant a judicial waiver petition "must be based on abuse of discretion by the court and may not be based on the weight of the evidence presented to the

---

[2] We note that the judicial waiver statute expressly prohibits a judge from considering "financial best interest or financial considerations or the potential financial impact on the minor or the minor's family if the minor does not terminate the pregnancy." § 390.01114(6)(d), Fla. Stat. (2023).

circuit court since the proceeding is a nonadversarial proceeding." *Id.* § 390.01114(6)(b)2.

Here, the circuit court correctly acknowledged that it cannot waive the requirements of parental notice and consent where the minor's planned abortion would take place beyond the allowable gestational age of the fetus. A court cannot, in other words, purport to authorize a minor to consent to an illegal abortion. We nonetheless are compelled to vacate the circuit court's dismissal here because it rests on a legal error: a failure to appreciate that Florida's prohibition on abortions beyond six weeks of fetal gestational age has yet to take effect.

Section four of Florida's recent Heartbeat Protection Act, Ch. 2023-21, Laws of Fla., amends section 390.0111, Florida Statutes, to generally prohibit physicians from knowingly performing or inducing abortions where the fetus has reached a gestational age of more than six weeks. However, section nine of the Act provides the following about the Act's effective date:

> Except as otherwise expressly provided in this act . . . this act shall take effect 30 days after any of the following occurs: a decision by the Florida Supreme Court holding that the right to privacy enshrined in s. 23, Article I of the State Constitution does not include a right to abortion; a decision by the Florida Supreme Court in *Planned Parenthood v. State*, SC2022-1050, that allows the prohibition on abortions after 15 weeks in s. 390.0111(1), Florida Statutes, to remain in effect, including a decision approving, in whole or in part, the First District Court of Appeal's decision under review or a decision discharging jurisdiction; an amendment to the State Constitution clarifying that s. 23, Article I of the State Constitution does not include a right to abortion; or a decision from the Florida Supreme Court after March 7, 2023, receding, in whole or

4

in part, from *In re T.W.*, 551 So. 2d 1186 (Fla. 1989), *North Fla. Women's Health v. State*, 866 So. 2d 612 (Fla. 2003), or *Gainesville Woman Care, LLC v. State*, 210 So. 3d 1243 (Fla. 2017).

Ch. 2023-21, § 9, Laws of Fla.

None of these contingencies have yet occurred. Therefore, under the plain text of section nine of the Act, the Act's prohibition on abortions past six weeks of fetal gestational age has not yet taken effect. The circuit court abused its discretion when it held otherwise.

III.

We now must determine the appropriate appellate remedy. This appeal arrives in an unusual posture, as the circuit court expressly declined to hold a full waiver hearing, did not consider the full list of factors enumerated in section 390.01114(6)(c), and did not make or decline to make the factual finding described in that statute. Consequently, on this record, we are unable to determine whether the minor is entitled to waiver of the default statutory requirements that her legal guardian be informed of, and give written informed consent to, the minor's planned abortion.

Given the under-developed record, we vacate the circuit court's order, remand this case for the court to hold a new and full hearing, and direct the court to rule on the minor's petition within three business days after the remand. *See* § 390.01114(6)(b)2., Fla. Stat. (2023). Moreover, based on our review of the record, we direct the Chief Judge of the Circuit Court to reassign the petition forthwith to another circuit judge. The new judge's ruling must be based on a consideration of all the factors enumerated in section 390.01114(6)(c), Florida Statutes (2023), and the ruling must make the factual finding described in that statute (whether or not, "by clear and convincing evidence," the minor is "sufficiently mature to decide whether to terminate her pregnancy," § 390.01114(6)(c)).

5

VACATED AND REMANDED WITH INSTRUCTIONS.


LAMBERT and PRATT, JJ., concur.
PRATT, J., concurs with opinion.
HARRIS, J., concurs in part with opinion.

PRATT, J., concurring.

"'Sunlight is said to be the best of disinfectants[.]'" *Buckley v. Valeo*, 424 U.S. 1, 67 (1976) (per curiam) (quoting Louis Brandeis, Other People's Money 62 (Nat'l Home Libr. Found. ed. 1933)). There isn't much sunlight in Florida's judicial waiver statute. Every day, courts across the State authorize unemancipated pregnant minors—those still under the care of parents or guardians whom the law otherwise presumes to act in the minors' best interests—to procure secret abortions that are hidden from the very adults who superintend all their other life decisions. We do not review these judicial waivers. The statute provides for appellate review only of decisions *not* to grant waiver petitions, *see* § 390.01114(6)(b)2., Fla. Stat. (2023), and it expressly states that "[a]n order authorizing a termination of pregnancy under this subsection is not subject to appeal," *id.* § 390.01114(6)(g). In other words, the system is built to keep judicial waivers beyond the sunlight of appellate review, no matter how far they might depart from the law—which makes parental consent the rule, and judicial waiver the exception—and no matter how far they might depart from the facts developed at the hearing. That is, assuming there is any meaningful hearing at all.

This appeal offers us a very rare look into the mindset of a court that, but for its mistaken view of the law, would allow an unemancipated juvenile to give consent for someone with a medical license to end the human life developing within her womb without any input from the grandmother who is raising her. That peek through the doorway is a disturbing one. The circuit judge below expressly declined to hold a full waiver hearing that examines all the factors that the judicial waiver statute directs him to consider. He likewise declined to make the factual finding that the statute requires before a minor's waiver petition can be granted. But in the very same hearing that he cut short, the judge unequivocally stated that he "would have otherwise granted the request but for" his mistaken reading of the Heartbeat Protection Act, Chapter 2023-21, Laws of Florida.

7

There's a term for this kind of statement made on the record in open court: "prejudgment." Or, in more common parlance, a "rubber stamp." There's no other way to interpret what the circuit judge said, and I fervently concur in the court's decision to take the rare step of ordering that this case be immediately reassigned away from a judge who stated that he had already made up his mind before he even heard the case. We have not only the authority to order that remedy, but also the obligation to do so.

Our drastic but necessary remedy sends a clear message: Florida's judicial waiver statute is not a rubber-stamp regime. If it were, the Legislature would have left the paperwork processing to the Department of Health, the Department of Children and Families, or any number of other state or local agencies. But it didn't. Instead, the Legislature left the decision to *judges*, and it required them to exercise *judgment*. Specifically, the statute requires judges to await a full record, consider the full list of statutory factors, and only then determine whether "clear and convincing evidence" supports the factual finding upon which a judicial waiver must be predicated. Anything less does a disservice to the law and the minors in crisis who invoke it.

HARRIS, J., concurring in part.

I am in full agreement with the majority that this case should be remanded so that the trial court can conduct a full evidentiary hearing on the minor's petition and make the requisite factual findings regarding her maturity to decide whether to terminate her pregnancy. I write separately simply to address the relevance, or lack thereof, of fetal gestational age at this stage of the proceedings.

The majority concludes that a trial judge cannot waive the parental notice and consent requirements where the statutory fetal gestational limit has been exceeded. This prohibition is read into the statute—where it does not exist—purportedly under the assumption that granting such a waiver would be tantamount to authorizing consent to an illegal abortion. It does no such thing. In granting a petition for judicial waiver, the court is merely determining that the petitioner is "sufficiently mature to decide whether to terminate her pregnancy." It does not, either explicitly or implicitly, authorize an abortion to occur, nor does it in any way trump the health care provider's statutory obligation to assure that the pregnancy is one which is eligible for termination. It merely eliminates two of the obstacles the legislature has appropriately enacted before a minor can terminate her pregnancy. In other words, the minor still must go to a licensed physician who must then determine, among other things, the gestational age of the fetus and whether the abortion can occur.

As the majority correctly notes, in order to grant the judicial waiver of the statutory notice and consent requirements, the trial court is required to consider the eight factors set forth in section 390.01114(6)(c), Florida Statutes. None of these factors includes the gestational age of the fetus. In fact, this issue is not mentioned one time in the "Procedure for Judicial Waiver" subsection. Section 390.0111, Florida Statutes, specifically deals with fetal gestational age. That section explicitly, and appropriately, requires a physician to determine the gestational age of the fetus. It mandates an ultrasound procedure to determine the probable gestational age of the fetus, and it imposes civil and criminal

penalties, as well as disciplinary sanctions, against a physician who does not comply. Clearly the legislature intended that the onus of determining appropriate fetal gestational age be placed on the physician performing the termination procedure. Our opinion today should not be read to in any way transfer that obligation to the trial court judge, whose review in determining whether a minor should be allowed to obtain an abortion without notification or consent should be limited to a consideration of eight specific statutory factors.

Regardless of a minor's "best guess" as to how far advanced her pregnancy is, the trial judge should not be compelled to accept her testimony, which on this issue may be over-estimated, under-estimated, or simply wrong. Whether a petitioner is beyond the gestational age requirement for obtaining a pregnancy termination is something that should, and can only, be determined by a medical professional. Accordingly, I would find that gestational age of the fetus is an irrelevant factor for the court's consideration when determining whether the minor petitioner is sufficiently mature to decide whether she can consent to an abortion and bypass the statutory notice requirements.

A problem with allowing or even authorizing the trial judge at this stage of the proceedings to consider gestational age is apparent in the majority's opinion, which holds that the trial court cannot waive parental notice and consent "where the minor's planned abortion would take place beyond the allowable gestational age of the fetus." The trial judge cannot know, nor could it know, control or dictate, when a "planned abortion" would occur. A judicial waiver does not come with an expiration date. For example, a minor who is five weeks pregnant, eligible for judicial waiver under any version of the statute, could obtain the judicial waiver and then decide to wait a month, 60 days, or 90 days before actually seeking the procedure. That is why, regardless of any judicial waiver she may hold in her hand, the legislature properly placed the burden of determining gestational age on the health care providers, because it should be the day of the procedure, not the day of the judicial waiver hearing, that controls. Requiring a trial judge to determine, or even consider, fetal gestational age when determining the pregnant mother's maturity level would

impose a gatekeeping function on the courts, which the legislature could have, but obviously chose not to impose.